**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) | |
| v. | ) ) | Case No.: 1:17-CR-10141-DPW |
| **STACEY LITTLEFIELD,** | ) ) ) | |
| **Defendant.** | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT'S MOTION TO SUPPRESS

Defendant Stacey Littlefield submits this memorandum in support of her motion to suppress. Pursuant to the Fourth Amendment of the U.S. Constitution, and the Supreme Court's decisions in *Terry v. Ohio*, 392 U.S. 1 (1968), and *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963), and their progeny, Ms. Littlefield seeks to suppress all evidence seized by the government, including drugs, money, cell phones, and statements, resulting from: (i) the unlawful traffic stop of Ms. Littlefield's car which occurred on April 3, 2017; (ii) the unreasonably prolonged detention of Ms. Littlefield and her car that followed the unlawful traffic stop; and (iii) the removal of Ms. Littlefield and the passengers from her car for the purpose of pat-frisking them, and the subsequent pat-frisks that occurred, notwithstanding there being no reasonable basis to suspect that either Ms. Littlefield or her passengers were armed or dangerous. The statements given by Ms. Littlefield to the police must be excluded for the additional reason that they were provided after Ms. Littlefield had been taken into custody, but before she had been given her *Miranda* warnings, in violation of the Fifth Amendment of the U.S. Constitution, as well as *Miranda v. Arizona*, 384 U.S. 436 (1966), and its progeny.

## STATEMENT OF FACTS

On the afternoon of April 3, 2017, Ms. Littlefield was driving her car northbound on Route 495 in Haverhill, Massachusetts. *See* State Police Arrest Report ("Rpt."), attached as Exhibit A, at ¶ 1. The vehicle was properly registered in New Hampshire under Ms. Littlefield's name. *See* Affidavit of Stacey Littlefield ("Aff."), attached as Exhibit B, at ¶ 2. There were two passengers in the vehicle: (i) Douglas Littlefield, Ms. Littlefield's husband, was in the front passenger seat; and (ii) co-defendant Melvin Weatherspoon, a friend of Mr. Littlefield's, was in the rear passenger seat. *See* Rpt. at ¶ 4; Aff. at ¶ 1.

Ms. Littlefield was driving lawfully and carefully on the highway. Aff. at ¶ 3. She was not speeding, and she was driving in her lane, without improperly crossing over into any other lane. *Id.* Despite Ms. Littlefield's compliance with the law, she was pulled over by Massachusetts State Trooper Jennifer Penton for allegedly having twice crossed over the right lane marking on the highway, *i.e.*, she was pulled over for a so called "marked lanes violation." Rpt. at ¶ 1.

At the time Ms. Littlefield was pulled over, she was driving in the center lane of a three lane highway. *Id*. at ¶ 4. Trooper Penton approached from the left lane and activated her cruiser lights. *Id*. Ms. Littlefield safely moved to the right lane and then safely pulled over in the breakdown lane. *Id.*. After Trooper Penton activated her cruiser lights, but before Ms. Littlefield's car came to a stop, Trooper Penton states that she saw the passenger in the rear seat of Ms. Littlefield's car turn back and look at the cruiser, and then bend down towards the floor. Rpt. at ¶ 2.

After pulling Ms. Littlefield over, Trooper Penton walked up to the passenger's side window, and requested Ms. Littlefield's license and registration. *Id*. at ¶¶ 2-3. Ms. Littlefield

complied and gave the Trooper her car's registration and her valid Maine driver's license. *See* Rpt. at ¶ 3; Aff. at ¶¶ 2, 5. Seeing that Ms. Littlefield did not have a Massachusetts driver's license, but without any basis to believe that Ms. Littlefield was armed or dangerous, Trooper Penton ordered Ms. Littlefield to get out of her car and frisked her. Rpt. at ¶ 3; Aff. at ¶ 6. No drugs or weapons were found on Ms. Littlefield's person, but Trooper Penton still ordered Ms. Littlefield to get into the rear of seat of her State Police cruiser, and locked the doors. Rpt. at ¶ 3; Aff. at ¶ 6. Ms. Littlefield was not free to leave the locked cruiser. Aff. at ¶ 6.

After placing Ms. Littlefield in the rear of the state police cruiser, Trooper Penton waited for backup to arrive. Rpt. at ¶ 3. Time passed while Trooper Penton was waiting, and it was only after backup arrived, that she ordered the rear passenger, Mr. Weatherspoon, out of the vehicle to frisk him. Rpt. at ¶ 3. There does not appear to have been any reason to believe Mr. Weatherspoon was either armed or dangerous, but still Trooper Penton, waited for back-up and ordered him out of the car for the purpose of frisking him. *Id*.

As Mr. Weatherspoon got out of Ms. Littlefield's car, Trooper Penton states that she observed "a large clear plastic bag containing several bags of a tan powder substance" inside Mr. Weatherspoon's sweatshirt front hand warmer pocket. Rpt. at ¶ 3. Trooper Penton seized the large clear plastic bag, and placed Mr. Weatherspoon under arrest. *Id.* Trooper Penton and backup Trooper Scott Hayes then removed Mr. Littlefield from the front passenger seat of the vehicle, searched him, and placed him under arrest. *Id.* at ¶ 4.

After arresting Mr. Weatherspoon and Mr. Littlefield, Trooper Penton returned to her locked cruiser and, without reading Ms. Littlefield her *Miranda* rights, asked Ms. Littlefield a series of questions about her relationship to the passengers in the car, and the reason she had traveled from Maine to Massachusetts. *Id.* at ¶ 5; Aff. at ¶ 7. Ms. Littlefield answered the

questions, and Trooper Penton then searched her vehicle, and seized cell phones and cash from the car.  Rpt. at ¶ 6; Aff. at ¶ 7.

Ms. Littlefield was charged with the unlicensed operation of a motor vehicle, trafficking in a Class A substance to wit heroin, and conspiracy to violate drug laws.  Rpt. at ¶ 9.  **Ms. Littlefield was not charged with a marked lanes violation**.  *See id.*  Mr. Weatherspoon and Mr. Littlefield were also charged with the drug violations.  *Id.*.

On May 24, 2017, Ms. Littlefield and Mr. Weatherspoon were indicted in this action and charged with conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. § 846.  Ms. Littlefield's husband, Douglas Littlefield, was not indicted federally.  After the return of the federal indictment against Ms. Littlefield and Mr. Weatherspoon, all state charges against both of them as well as Mr. Littlefield, were dismissed.

The "tan powder substance" in the twelve bags that the State Police seized from Mr. Weatherspoon as soon as they ordered him out of Ms. Littlefield's car was tested by the State Police Crime Laboratory.  The Certificates of Drug Analysis issued by the Laboratory indicate that the powder in the twelve bags weighed approximately 59.27 grams, and contained Ketamine, Fentanyl, Caffeine and Lactose.  *See* Certificates of Drug Analysis, dated June 18 and 29, 2017, copies of which are attached as Exhibit C.  The government has made clear to undersigned counsel that as part of this case it will seek to hold Ms. Littlefield responsible for the drugs seized from Mr. Weatherspoon.

## ARGUMENT

The stop of an automobile and the detention of its occupants constitutes a seizure under the Fourth Amendment.  *Whren v. United States*, 517 U.S. 806, 809-10 (1996).  To satisfy the Fourth Amendment that all such seizures be reasonable, police officers conducting an

investigatory stop must have "reasonable suspicion" of criminal activity before they make the stop. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). They "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts," justify the stop. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Reasonable suspicion requires more than a naked hunch that a person may be engaged in some illicit activity. *United States v. Chhien*, 266 F.3d 1, 6 (1st Cir. 2001). If an initial stop of a vehicle is illegal, evidence seized as a result of the stop must be excluded from evidence as "fruit of the poisonous tree." *See, e.g., United States v. Kimball*, 25 F.3d 1, 5-6 (1st Cir. 1994) (citing *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963)).

### A. The Stop Of Ms. Littlefield's Car Was Unreasonable.

A traffic offense can provide the necessary reasonable basis for a warrantless search and seizure of an automobile. *See, e.g., Maryland v. Wilson*, 519 U.S. 408, 410 (1997). But first there must be a traffic offense. *Id*. Without a traffic offense there is generally no reasonable basis for stopping a car, and all evidence subsequently seized from the car must be suppressed in any case against the driver of the car. *See Whren*, 517 U.S. at 810; *United States v. Alix*, 630 F. Supp. 2d 145, 158 (D. Mass. 2009).

Here, there was no justification for the stop of Ms. Littlefield's car on April 3, 2017. Ms. Littlefield was neither speeding nor weaving between lanes nor changing lanes without signaling properly. At the time that Trooper Penton pulled her over for a purported traffic offense, she had committed no traffic violation. As a result, the stop was not reasonable, and all items subsequently seized incident to the unlawful stop must be suppressed as fruit of the poisonous tree. *See, e.g.*, *United States v. Rowell,* No. 03-10268-PBS, 2004 WL 555261, at *6 (Mar. 18, 2004) (granting motion to suppress drugs as fruit of poisonous tree where traffic stop was unlawful).

The entire justification presented in the State Police Arrest Report for the stop of the automobile was a purported "marked lanes" violation. *See* Rpt. at ¶ 1. But Ms. Littlefield believes that violation never occurred, and in fact the State Police never charged Ms. Littlefield with any such violation. Aff. at ¶ 8; Rpt. at ¶ 9. Without the supposed "marked lanes" violation, there was no reasonable basis for the stop of Ms. Littlefield's car, and the evidence subsequently seized, including all drugs, must be suppressed. *Rowell,* 2004 WL 555261, at *6.

Per the State Police Arrest Report, the only other law enforcement observation that could conceivably be used to justify the stop is the purported observation of Mr. Weatherspoon, the back seat passenger, turning around and looking at the State Police cruiser and then bending down toward the floor of the car. Rpt. at ¶ 2. But Trooper Penton had already turned on her flashing cruiser lights, *i.e.*, she had made the decision to stop the car, before Mr. Weatherspoon turned around. *Id.* And regardless there is nothing suspicious about a passenger in an automobile turning around or leaning down toward the floor of the car. Indeed, it is quite natural for a passenger in a car to turn around in response to flashing police lights, and if that same passenger subsequently bends down, it could be for a host of innocent reasons including needing to scratch an ankle itch or to retrieve a can of soda from the floor. Simply put, there was nothing about Mr. Weatherspoon's actions, as reported in the State Police Arrest Report, that could possibly be used to justify the stop of Ms. Littlefield's car, and stave off suppression of the later seized evidence. *See Chhien*, 266 F.3d at 6 (traffic stop must be supported by reasonable and articulable suspicion of criminal activity, and "more than a naked hunch that a particular person may be engaged in some illicit activity.").

The stop of Ms. Littlefield's car appears to have been based on nothing more than a hunch about possible criminal conduct. As such, the stop was unlawful and all items seized and

statements made thereafter should be suppressed as fruit of the poisonous tree. *See, e.g.*, *United States v. Sugar*, 322 F. Supp. 2d. 85, 93-94 (D. Mass. 2004) (citing *Wong Sun*, 371 U.S. at 487-88).

### B. The Detention Of Ms. Littlefield, Beyond The Time Necessary To Write-up The Fictitious "Marked Lanes" Violation, Was Unreasonable.

Even assuming *arguendo* that the alleged "marked lanes" violation occurred (which it did not) and the traffic stop of Ms. Littlefield's car was, therefore, justified (which it was not), Trooper Penton did not have the necessary reasonable suspicion to detain Ms. Littlefield and her passengers beyond the short period of time needed to effectuate the traffic stop and write-up a ticket for the minor infraction. And without such reasonable basis to prolong the stop, the detention, and the sheer duration of the stop, was a violation of the Fourth Amendment, and all of the evidence seized from the car and its passengers subsequent to the unnecessarily and unreasonably prolonged stop and detention must be suppressed. *See, e.g., Sugar* 322 F. Supp. 2d. at 92 (granting motion to suppress, finding officer lacked reasonable suspicion to detain defendants beyond what was necessary to issue a traffic citation); *United States v. Garcia*, 53 F. Supp. 3d 502, 514-15 (D.N.H. 2014) (granting motion to suppress, finding continued detention of defendants after resolution of minor traffic issue impermissible and unsupported by reasonable suspicion of criminal activity).

According to the State Police Arrest Report, the stop of Ms. Littlefield's car was a garden variety traffic stop. Immediately after Trooper Penton activated her cruiser lights, Ms. Littlefield pulled over. Rpt. at ¶ 2. She did not appear to be drunk or high or otherwise impaired. *Id*. at ¶¶ 2-3. When Trooper Penton walked up to the passenger's side window, Ms. Littlefield produced her license and registration, both of which were valid. Rpt. at ¶ 3; Aff. at ¶ 2. There was no odor of alcohol or marijuana coming from the car, nor were there any drugs in plain

7

view.  Rpt. at ¶¶ 2-3.  Furthermore, neither Ms. Littlefield nor either of her passengers said anything to arouse suspicion of wrongdoing, or to suggest that they were armed or dangerous. *Id.*

The only conduct to which the State Police Report points as supposedly arousing suspicion of wrongdoing beyond the purported "marked lanes" violation was Trooper Penton's observation that Ms. Littlefield's hands were "shaking" as she handed over her license and registration.  Rpt. at ¶ 3.  But nervousness during a traffic stop is an entirely natural reaction to police presence and cannot, without more, establish the reasonable suspicion necessary to prolong an otherwise routine traffic stop, let alone to detain and/or search the driver and her passengers.  *See, e.g., Garcia*, 53 F. Supp. 3d at 511-513 (citing *United States v. McKoy*, 428 F. 3d 38, 40 (1st Cir. 2005) (granting motion to suppress, stating "defendants' nervousness, without more, did not provide [the trooper] with reasonable articulable suspicion to extend the traffic stop for another 20 minutes after he issued the traffic warning fully resolving the ostensible purpose of the stop."); *Alix*, 630 F. Supp. 2d at 157 (nervousness is "not enough to suggest that the defendants were carrying a weapon" or to prolong a routine traffic stop).

Under the circumstances present here, once Trooper Penton had written up a ticket for Ms. Littlefield's alleged "marked lanes" violation, she was duty-bound to send Ms. Littlefield on her way.  Instead, she concocted an offense out of the fact that Ms. Littlefield was driving in Massachusetts with a valid Maine driver's license, but not a Massachusetts driver's license, and she then proceeded to order Ms. Littlefield out of her car, frisk her, lock her in the police cruiser, and prolong the traffic stop until back-up arrived, and then order the passengers out of the car, and search the car.  All of this was a violation of Ms. Littlefield's Fourth Amendment rights. *Garcia*, 53 F. Supp. 3d at 514.  As the court aptly stated in *Alix*:

> One can pretend that the stop is justified as a traffic stop, so long as the car was actually violating the law. One can do what is necessary to learn about the occupants during the stop – questioning, asking for documentation – so long as one acts consistent with the limited information he has. What one cannot do is carry the stop beyond its rationale. Otherwise, more than the traffic stop rationale would be illusory; Fourth Amendment protection would be, as well.

630 F. Supp. 2d at 158. Here, as in *Alix*, all of the evidence seized as a result of the unreasonably prolonged traffic stop, *i.e.*, all evidence seized subsequent to the time when Ms. Littlefield should have been sent on her way for the alleged traffic violation, including drugs, cell phones and statements, must be suppressed as fruit of the poisonous tree. *See, e.g.*, *Sugar*, 322 F. Supp. 2d. at 93-94 ("[b]ecause the detention was unreasonable under the Fourth Amendment, anything resulting from it is excludable as the fruit of the poisonous tree.").

    **C.**     **The Pat Frisk Of Ms. Littlefield, And The Order That She And Her Passengers Get Out Of The Car, Were Unreasonable, As There Was No Reason To Believe Either Ms. Littlefield Or Her Passengers Were Armed Or Dangerous.**

As set forth in the State Police Arrest Report, nothing whatsoever about the conduct of Ms. Littlefield or her passengers, either before or immediately after the traffic stop (which itself was unlawful), justified either the pat frisk of Ms. Littlefield or the order that she and her passengers get out of the car. *See* Rpt. ¶¶ 1-3. The State Police had no reason to believe that either Ms. Littlefield or her passengers were armed or dangerous, and without any such reason there was no legal basis to pat frisk Ms. Littlefield or her passengers. *See, e.g.*, *Arizona v. Johnson*, 555 U.S. 323, 327 (2009) (while drivers and passengers may be ordered out of a car incident to a lawful traffic stop, "[t]o justify a patdown of the driver or passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous"); *Alix*, 630 F. Supp. 2d at 157 (finding information regarding a narcotics

investigation along with passenger's nervousness not enough to suggest vehicle occupants were carrying a weapon justifying patdown). As a result, all evidence obtained by the government as a result of the pat frisk of Ms. Littlefield or the unlawful removal of her passengers from the car for the purpose of frisking them must be suppressed. *See Alix,* 630 F. Supp. 2d at 157 (granting motion to suppress drugs that fell from driver's clothing when ordered out of vehicle for frisk without reason to believe anyone in the car was either dangerous or carrying a weapon).

### D. Ms. Littlefield's Non-*Mirandized* Statements Must Be Suppressed.

Independent of the Fourth Amendment based reasons to suppress all of the evidence, including Ms. Littlefield's statements, which were seized from Ms. Littlefield, her car, and her passengers, the statements Ms. Littlefield made to Trooper Penton must be suppressed for the independent reason that they were made during custodial interrogation without Ms. Littlefield having been read her *Miranda* rights. Rpt. at ¶¶ 3,5; Aff. at ¶ 7. "It is bedrock law that a person questioned by law enforcement officers after being taken into custody or otherwise deprived of [her] freedom of action in any significant way must first be given *Miranda* warnings." *United States v. Cabral*, 965 F. Supp. 2d 161,168 (D. Mass. 2013) (citing *United States v. Hughes*, 640 F.3d 428, 434 (1st Cir. 2011)).

In the absence of a formal arrest, courts engage in a two-step inquiry to determine whether a defendant was in "custody": (1) ascertain the circumstances surrounding the interrogation, and (2) determine whether those circumstances, when viewed objectively, constitute the requisite "restraint on freedom of movement of the degree associated with a formal arrest." *Hughes*, 640 F.3d at 435. Here, there can be no question that Ms. Littlefield was in custody at the time she was interrogated by Trooper Penton and answered the Trooper's questions.

After Ms. Littlefield was unlawfully stopped, unlawfully detained, and unlawfully frisked, she was placed in the back of a locked State Police cruiser. Rpt. at ¶ 3. She was not free to leave. Aff. at ¶ 6. She remained in the locked cruiser while Trooper Penton waited for back-up to arrive and while Troopers Penton and Hayes removed each passenger from the car, frisked them, found drugs on the person of one of the passengers, arrested both passengers, and locked them in Trooper Hayes's cruiser. Rpt. at ¶¶ 3-5. After all of that, Trooper Penton returned to Ms. Littlefield in the locked cruiser, and asked her a series of questions without first reading Ms. Littlefield her *Miranda* rights. Under these circumstances, even though no one had expressly stated to Ms. Littlefield that she was under arrest, there can be no question that she was not free to leave. Rpt. at ¶¶ 3, 5; Aff. at ¶ 6. She was physically restrained. The "restraint on her freedom of movement" was not merely "of the degree associated with a formal arrest," *Hughes*, 640 F.3d at 435, it was exactly the same as a formal arrest. Ms. Littlefield was in custody and functionally under arrest. *See, e.g.*, *Cabral* 965 F. Supp. 2d at 169-70 (suppressing defendant's non-*Mirandized* statements made to state trooper while confined in the back of police cruiser and where another trooper was on scene, as "defendant was restrained to a degree commensurate with arrest and should have been given *Miranda* warnings"). Accordingly, before she was interrogated, the State Police were required to read her *Miranda* rights. *Id.* All of the statements Ms. Littlefield made in response to her non-*Mirandized* custodial interrogation must be suppressed. *See Hughes*, 640 F.3d at 434; *Cabral* 965 F. Supp. 2d at 169-170.

## CONCLUSION

For all of the reasons presented above, Ms. Littlefield's motion to suppress should be granted, and the government should be precluded from using at trial any of the evidence,

including drugs, cell-phones, and statements, seized by the State Police following the stop of Ms. Littlefield's car on April 3, 2017.

January 18, 2017

Respectfully submitted,

STACEY LITTLEFIELD

By her attorneys,

 /s/ David J. Apfel
David J. Apfel (BBO # 551139)
Laura S. Craven (BBO # 652276)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
T: 617-570-1000
F: 617-523-1231
dapfel@goodwinlaw.com
lcraven@goodwinlaw.com

**CERTIFICATE OF SERVICE**

I, David J. Apfel, Esq., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 18, 2017.

 /s/ David J. Apfel
David J. Apfel, Esq.